## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 23-cr-160 RC** |
| | : | |
| **DANIEL BALL,** | : | |
| | : | |
| **Defendant.** | : | |

### UNITED STATES'S SURREPLY TO DEFENDANT'S
### PENDING MOTION TO CHANGE VENUE

On June 5, 2024, the government provided notice to this Court that the United States Court of Appeals for the District of Columbia Circuit issued its opinion in *United States v. Webster*, 102 F.4th 471 (D.C. Cir. 2024). On June 21, 2024, the defendant filed a 14-page response alongside a motion for leave to submit the late filing. ECF No. 35, 35-2. In his response, the defendant argues, "While the *Webster* Court addressed some relevant considerations, in various regards, it also misapplied the law and/or ignored long-standing precedent." ECF No. 35-2 at 4. Respectfully, the defendant's argument that binding precedent be ignored misconstrues the nature of the government's notice. This Court need not consider the defendant's recent filing.

**I.      The Defendant's Motion Was Fully Briefed on May 8, 2024.**

The defendant filed a motion to transfer venue on April 19, 2024. ECF No. 25. In his motion, the defendant argued, "[T]he persistent and inflammatory media coverage surrounding January 6 has disadvantaged defendants currently facing trial." ECF No. 25 at 4.  Thus, he specifically sought a transfer of the case to the Middle District of Florida. The government responded to his motion on May 1, 2024. ECF No. 28. The defendant then replied to the government's response on May 8, 2024. ECF No. 29. As part of that filing, he continued to argue, "January 6 has continued to be at the forefront of the discourse coming out of Washington, D.C.,

in the context of the presidential election (one of the most, if not the most, covered event in a respective year)." ECF No. 29 at 3.

## II.     The Court of Appeals Issued Its Opinion on May 28, 2024.

On May 28, 2024, the Court of Appeals for the District of Columbia Circuit issued its opinion in *United States v. Webster*, 102 F.4th 471 (D.C. Cir. 2024). Much like the defendant here, the defendant in *Webster* argued, "[T]he entire jury pool was presumptively prejudiced against him, and so the district court should have transferred his case to a different venue before the start of the jury-selection process (known as *voir dire*)." *Webster*, 102 F.4th at 479. The Court of Appeals reasoned, "Webster's focus on the jury pool's opinion of January 6th and its perpetrators misses the point." *Id*. at 480. As explicitly stated, "[g]eneralized disapproval of criminal conduct—even the specific conduct at issue in a defendant's case—says nothing about a juror's ability to be impartial in deciding whether a particular individual committed a crime or not." *Id*.

As part of its analysis, the Court noted, "Webster asserts that the District overwhelmingly voted for President Biden and historically votes for Democratic candidates." *Id*. at 481.  "But the political inclinations of a populace writ large say nothing about an individual's ability to serve impartially in adjudicating the criminal conduct of an individual." *Id*.

Both pronouncements speak directly to the defendant's motion to transfer venue of his case.

## III.    The Government Submitted Notice of Supplemental Authority on June 7, 2024.

On June 7, 2024, the government filed a notice of supplemental authority regarding the defendant's pending motion to transfer venue. ECF No. 30. The government provided this Court with the overall takeaway from *Webster* and attached the entire opinion.[1]

---

[1] At the time of the government's filing, the opinion did not have a paginated citation to the Federal Reporter.

**IV.     Mr. Ball's Response Submitted on June 21, 2024.**

Notwithstanding such now-binding precedent, the defendant nonetheless filed a response to the government's notice of supplemental authority on June 21, 2024. ECF No. 35-2. All in all, the defendant's response appears to re-litigate the scope and tenor of *Webster*.  Ignoring the binding nature of *Webster* and the defendant's confusing assessment of an opinion that produced no dissent, the defendant's argument as to how his case is different than *Webster* rings hollow.

First, the defendant's attack on the internal logic of *Webster* is specious. Specifically, the defendant continues to argue that the poll relied upon by Webster is not as flawed as found by the Court of Appeals. *See* ECF No. 35-2 p. 5-10. Relegated to a footnote within his filing, the defendant relies upon the *same poll* (*Compare* ECF No. 25-1 to *United States v. Webster*, 21-cr-208 APM (D.D.C. 2022), ECF No. 49-1). In any event, it is difficult to see daylight between the overall thrust of *Webster* and any similarly-situated January 6 defendant who relies upon the same arguments as before.

Second, contrary to the defendant's argument, *Webster* is plainly the same as the case presented here. In *Webster,* the Court noted that the defendant focused on whether the jury pool was inappropriately exposed to "two newspaper articles that name him and describe his January 6th conduct." 102 F.4th at 479. In rejecting Webster's argument regarding media coverage (including, but not limited to being called an "eye gouger" or "junkyard dog", *id.* at 480), the Court held that "such, routine and objective press coverage of a criminal prosecution does not trench upon the defendant's right to a fair trial." *Id*. The same is true here.

In this case, the defendant points to a news article, for example, from a national news source, giving "vivid details" about the device the defendant is have alleged to have used on January 6, 2021. ECF No. 35, at 11. Another article, by the same outlet, focuses on some nebulous

association between the facts of the defendant's case, and the title of the article (which does *not* relate to the defendant). But these Articles are exactly the type of articles that the *Webster* Court considered. They do not prove anything about whether the local jury pool had "any preconceived notice" about the defendant. *Id.* at 479. They do not illustrate "pervasive" coverage of his crimes. *Id.* They "recite the facts of the allegations confronting" the defendant. *Id.* at 480. And they do not, in any substantive way, answer the "essential question: Can the District's potential jurors lay aside their impression or opinion of [the defendant] or events of January 6th and render a verdict based on the evidence presented in Court." *Id.* (internal punctuation omitted).

Instead, the defendant relies on a series of alleged distinctions without a difference. Here, multiple online news articles available to the entire American population, coupled with shared redistribution of other articles among "social media users" – a vast online fountain – do not impute such prejudice as to warrant a change in venue. Even considering the defendant's use of a specific dangerous weapon under 18 U.S.C. § 111(b)—the same charge against *Webster*—the defendant's attempt to distinguish *Webster* falls flat. In reality, if the defendant's arguments are taken to its logical conclusion, no similarly-situated defendant could have a trial in any district, let alone this one. *Webster* thus start and ends the inquiry in this specific case.

In the end, "[w]hat matters is that the defendant be given 'a full and fair opportunity' to expose any partiality in potential jurors." 102 F.4th at 482 (*quoting United States v. West*, 458 F.3d 1, 6 (D.C. Cir. 2006)). That opportunity occurs during juror voir dire and has not yet happened in this case.

4

## V.      Conclusion

This Court should deny the defendant's motion to transfer venue to the Middle District of

Florida.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Date: June 21, 2024              /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov