THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Criminal No. 1:23-cr-00160-RC-1** |
| **DANIEL BALL,** | ) | |
| *Defendant.* | ) | |

### DEFENDANT BALL'S MOTION TO COMPEL

Daniel Ball, by and through undersigned counsel, respectfully requests that this Honorable Court compel the government to disclose relevant discovery and communications relating to the prosecution of *United States v. Ty Fox*, No. 3:20-cr-00501-SI-1 (D. Or.), and *United States v. Sami Horner*, No. 2:20-cr-00144-RAJ-1 (W.D. Wash.), as well as certain materials related to the prosecution of Mr. Ball.[1]

In support of this Motion, counsel submits the following:

1. On April 27, 2023, Mr. Ball was charged via complaint with: Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Use of Fire or Explosive to Commit a Felony, in violation of 18 U.S.C. § 844(h)(1); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Aiding and Abetting, in violation of 18 U.S.C. § 2[2]; Entering and Remaining in a Restricted Building or Grounds Without Lawful Authority, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4);

---

[1] Mr. Ball intends to file another motion to compel regarding materials that are not currently viewed as imperative to filings with deadlines within the next few weeks or so.

[2] It is unclear from the complaint to which charge Section 2 is intended to apply.

1

Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(b)(1)(A)[3]; Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); Acts of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); Parading, Demonstrating, or Picketing in any of the Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(G); and Stealing Any Thing Value of the United States, in violation of 18 U.S.C. § 641.

2. On May 10, 2023, Mr. Ball was charged via indictment with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Use of Explosive to Commit a Felony, in violation of 18 U.S.C. § 844(h)(1); Theft of Government Property, in violation of 18 U.S.C. § 641; Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A); Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A); Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A); Unlawful Possession of an Explosive in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(1)(A); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(F); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

3. Mr. Ball files the instant Motion in preparation for his anticipated submission of comprehensive expert reports, one or more motions to suppress, and a motion to dismiss, all of which rely, in part, on case comparisons.

---

[3] The complaint appears to misapply this provision, since it is meant to accompany a substantive charge.

2

4. Mr. Ball is seeking materials from cases that have facts that are arguably far more egregious than those alleged in his case to support, *inter alia,* a selective prosecution argument, particularly as it relates to the counts alleging the use of an explosive, which include Count Two, charging Section 111(a) and (b), and Count Four, charging Section 844(h).[4]

5. Specifically, such counts relate to allegations that, on January 6, 2021, Mr. Ball threw an explosive device into the opening of the Lower West Tunnel, which contained officers.

6. Consistent with the discovery in this case, the government has indicated that they *do not* believe that Mr. Ball brought the alleged device to Capitol grounds. Instead, they believe—and a video appears to show—an individual ("Individual 1") handing something to a person the government purports is Mr. Ball ("Individual 2") before Individual 2 throws an item towards the Lower West Tunnel and a purported explosion occurs.

7. Defense counsel presented to the government an overview of cases highlighting the government's disparate treatment of Mr. Ball, among other things. Despite defense counsel's repeated requests, the government is unwilling to advance a plea offer or move forward with a stipulated trial that does not include the Section 844(h) count plus additional charges. When inquiring why the government is unwilling to afford Mr. Ball a disposition in his case similar to those in cases involving more serious and harmful conduct, the government specifically cited the custodial interview of Mr. Ball, during which Mr. Ball explained his constitutionally protected viewpoints, including his concern about the government's actions in recent years (during the Biden Administration).

---

[4] The information might also help support an argument of vindictive prosecution or other claims because, for example, the government threatened to charge Mr. Ball with a thirty-year mandatory minimum explosives charge pertaining to use of a destructive device if he did not accept the plea offer to the previous plea offer. After Mr. Ball declined the plea offer and expressed concerns about selective prosecution, defense counsel was denied the ability to speak with the Assistant U.S. Attorney in the Middle District of Florida, and Mr. Ball has since been indicted in the Middle District of Florida based on the search of Mr. Ball's home in relation to his January 6 case that took place over a year ago.

8. Review of similar and more egregious cases show that Mr. Ball has, *inter alia*, a meritorious selective prosecution claim. For instance, Mr. Ball is charged with Section 844(h), which has not been charged in other riot cases where the facts were far more egregious but the underlying actors were associated with causes typically associated with the Democratic Party. *See, e.g.*, *United States v. Rogers*, 2020 CF3 006970 (D.C.) (for her conduct at an anti-police protest turned riot of throwing an M-80 style firework at police officers, which led to the burning the trousers of one police official, the defendant was charged with and ultimately *nolle prosed* on felony assault on a police officer while armed and misdemeanor rioting); *United States v. Maza*, No. 3:20-cr-00343 (D. Or.) (the defendant was charged only with one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, 18 U.S.C. § 111(a) and (b), despite the fact that the defendant, who was a primary agitator at the Portland protest, broke a courthouse window, and threw a large commercial grade explosive device into a confined space filled with law enforcement personnel, who suffered severe injuries as a result); *United States v. Jones*, 647 F.2d 696 (6th Cir. 1981) (charging a strikebreaker who used dynamite to blow up a building under Section 844(i), which provides for a lesser mandatory minimum than Section 844(h)). No case similar to Mr. Ball's has been prosecuted so severely or at all. *See, e.g., United States v. Horner*, No. 2:20-cr-00144-RAJ-1 (W.D. Wash.) (charging a statute with a *maximum* of ten 10 years' imprisonment for the defendant's conduct during a protest in Seattle's Capitol Hill area, which included smashing windows at a bank branch before immediately being arrested with backpack containing a glass bottle with a wick that was filled with flammable material, two lighters, a helmet, a mask with filters, and a walkie-talkie, despite the defendant's status as a known advocate of violence, which included him urging others to engage in the killing of police officers; dismissing the case as a result of negotiations that we understand relied on defense counsel

providing an expert report that the device at issue was effectively no more hazardous than a firecracker").

9. Defense counsel has obtained the requisite relevant materials in each of the cases of interest, except two: *United States v. Ty Fox*, No. 3:20-cr-00501-SI-1 (D. Or.), and *United States v. Sami Horner*, No. 2:20-cr-00144-RAJ-1 (W.D. Wash.). Accordingly, Mr. Ball requests that this Court enter an order compelling the government to disclose the following:

    a. All communications regarding the prosecution of *Fox* between Fox's defense counsel and line Assistant U.S. Attorneys at the U.S. Attorney's Office for the District of Oregon.

    b. All communications regarding the prosecution of *Horner* between Horner's defense counsel and line Assistant U.S. Attorneys at the U.S. Attorney's Office for the Western District of Washington.

    c. All discovery relating to *Fox* pertaining to the actual or alleged use of any explosive or destructive device in the possession of the U.S. Attorney's Office for the District of Oregon.

    d. All discovery relating to *Horner* pertaining to the actual or alleged use of any explosive or destructive device in the possession of the U.S. Attorney's Office for the Western District of Washington.

    e. All communications between the Department of Justice ("Main Justice") and the U.S. Attorney's Office for the District of Oregon regarding the prosecution of *Fox*.

  f. All communications between Main Justice and the U.S. Attorney's Offices for the Western District of Washington regarding the prosecution of *Horner*.

  g. All communications between management at the U.S. Attorney's Office for the District of Oregon and the line Assistant U.S. Attorneys regarding the prosecution of *Fox*.

  h. All communications between management at the U.S. Attorney's Office for the Western District of Washington and the line Assistant U.S. Attorneys regarding the prosecution of *Horner*.

10. Mr. Ball also requests the following:

  a. All communications between Main Justice and the U.S. Attorney's Office for the District of Columbia regarding the prosecution of Mr. Ball.

  b. All communications between management at the U.S. Attorney's Office for the District of Columbia and the line Assistant U.S. Attorneys regarding the prosecution of Mr. Ball.

  c. All communications between the U.S. Attorney's Office for the Middle District of Florida and the U.S. Attorney's Office for the District of Columbia regarding the prosecution of Mr. Ball.

  d. Information relating to the person who the government believes handed the purported explosive device to the individual alleged to be Mr. Ball.

  e. Information relating to what type of device the U.S. Attorney's Office for the District of Columbia believes the purported explosive to be.

    f.  All recorded statements of the government's expert witness(es) related to the prosecution of Mr. Ball for his alleged use of an explosive.

  10.  Disclosure is appropriate pursuant to Federal Rule of Criminal Procedure 16(1)(E), as the requested materials are "within the government's possession, custody, or control" and are "material to preparing the defense." While Mr. Ball seeks the requested materials for arguments other than simply selective prosecution,[5] Mr. Ball's request is also appropriate under that basis, as he has made "a colorable claim" of discriminatory purpose[6] and discriminatory effect.[7] *See Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997).

  11.  Because of the September 6, 2024 expert deadline and the Rule 12 motions deadline soon thereafter, Mr. Ball would ask that the Court order disclosure by September 3, 2024 at 12 p.m. EST. The respective U.S. Attorney's Offices have been provided enough time to comply with such a disclosure request. The line prosecutors assigned in *Fox* and *Horner* were informed over a month ago about the then-forthcoming instant motion and what Mr. Ball would be seeking. And, the line prosecutor in Mr. Ball's case was informed at least a month or so ago about Mr. Ball's intention to advance a selective prosecution claim, which would involve him seeking the disclosure

---

[5] For instance, Mr. Ball's defense rests in part on the fact that the type of device allegedly used by Mr. Ball does not fall within the definition of "explosive" under Section 844(j). It is our understanding that in one of the respective cases at issue, the Assistant U.S. Attorney declined to prosecute more severely because he determined the device was comparable to the device likely used in relation to the alleged conduct in Mr. Ball's case.

[6] While Mr. Ball is able to make an adequate showing of discriminatory purpose, such a showing is not required, as "the D.C. Circuit has recently held that claims of selective prosecution based on the First Amendment, such as this one here, do not require a showing of discriminatory intent." *United States v. Young*, No. 23-CR-241 (GMH), 2024 WL 3030656, at *2 (D.D.C. June 17, 2024) (citation omitted).

[7] While a number of district judges in other January 6 cases have declined to compel the government to produce materials in relation to other prosecutions around the country, Mr. Ball's case is the only January 6 defendant charged with Section 844(h). The selective prosecution analyses in other January 6 cases do not hold weight here given that even more egregious circumstances were present (including as it relates to the dangerousness of devices used and the types and extent of harm caused) in the riot cases where traditionally democratic causes were central and resulted in a dismissal upon the government's motion and/or were charged much more mercifully. Also of note, most, if not all judges in other January 6 cases appeared to rely on inaccurate or incomplete portrayals of the respective comparison riot cases in their selective prosecution analyses; in any event, their analyses are more or less irrelevant and inapplicable when looking at the specific facts in the cases of comparison riot cases involving explosives.

7

of communications about his case from the U.S. Attorney's Office for the District of Columbia, and his desire to obtain the rest of the requested information.

12. The government failed to provide a position for all of Mr. Ball's requests herein. However, although it has not provided a privilege log, the government stated that it believed some of the requested materials were privileged. Specifically, it stated it believed the communications related to Mr. Ball's case and the internal communications among U.S. Attorney's Offices and/or components of Main Justice for other cases are privileged. As the Court knows, privilege is not a bar to obtaining communications for purposes of a selective prosecution claim. Moreover, while the government indicated previously that it was willing to help assist defense counsel in obtaining information relating to the cases for comparison (e.g., *Fox* and *Horner*), since explaining that Mr. Ball intends to raise a selective prosecution claim, the government's current position is that it believes Mr. Ball needs to make a showing of a colorable selective prosecution claim for discovery in other cases and does not believe Mr. Box has "provided credible evidence that supports such a claim."

13. To the extent that the requested materials are purported to be privileged, Mr. Ball requests that the Court engage in an in camera review for materials relevant to Mr. Ball's selective prosecution claim and for materials that are exculpatory.

14. If this Court finds Mr. Ball has not met his burden to compel the disclosure of such materials, he would ask that the Court deny his request without prejudice, as his Motion to Dismiss will, among other things, comprehensively set forth the full nature of the concerning disparities in charging decisions, or allow him to submit supplemental materials *ex parte* and under seal should the Court desire more information before making a ruling, as the defense expert reports, for example, are work product at this point.

In light of the above, Daniel Ball, by and through undersigned counsel, requests the aforementioned relief.

Respectfully submitted,

/s/  Amy C. Collins
Amy C. Collins
D.C. Bar No. 1708316
888 17th Street, NW, Suite 1200
Washington, D.C. 20006
(228) 424-0609
amy@amyccollinslaw.com
acollins@kalbianhagerty.com
*Counsel for Daniel Ball*

### **CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of August 2024, I have served this Motion upon the Clerk of Court and the parties in this matter through the CM/ECF system.

/s/  Amy C. Collins
Amy C. Collins
