## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 23-cr-160-RC |
| | : | |
| DANIEL BALL, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The United States, by and through its attorney the United States Attorney for the District of Columbia, respectfully requests this Court deny the defendant's Motion to Compel (ECF No. 42). The defendant seeks material that is outside the provisions of Fed. R. Crim. P 16(a)(1), and specifically excluded from disclosure under Fed. R. Crim. P 16(a)(2). In support of his request, he claims the information is material to the preparation of his defense, but because he has not provided any evidence tending to show how internal charging decisions or plea negotiations in this or other cases are relevant to prepare his defense—and has not overcome the rigorous standard for discovery in support of a selective prosecution claim—this Court should deny his motion.

### I.    Relevant factual background

#### a.  Specific Conduct of Daniel Ball

Daniel Charles Ball travelled from Homosassa, Florida, to Washington D.C. in January 2021. After attending the "Stop the Steal" rally near the White House, he made his way to the United States Capitol and joined a violent mob entering the building. At approximately 3:29 p.m., Ball entered the Capitol through the breached Senate Wing door. He quickly moved to a nearby window, where he pried a piece of the wooden shutter away from the nearby window. Outside, he broke the wood in half and presented it to another rioter, calling it "a piece of history."

Nearly an hour later, Ball moved to the Lower West Terrace, and joined other rioters trying to breach the Lower West Terrace door. During a concerted effort, Ball shoved against a phalanx of police officers wearing high-visibility coats and helmets while carrying shields. After this unsuccessful attempt to regain entry into the building, Ball returned to the mob on the nearly constructed Presidential Inaugural stage. From this location, Ball threw a lit explosive into that same phalanx. The device ricocheted off the face mask of a member of the Metropolitan Police Department and exploded against the northern wall of the tunnel. The explosion caused an officer to suffer hearing loss. Later, Ball threw a large piece of wood—a leg of a table or chair—at the same line.

Ball was arrested for his conduct on May 2, 2023, when Ball arrived for a regularly scheduled probation appointment unrelated to the present case. Ball was transported by a local sheriff's deputy to the Citrus County Sheriff's Office. During the transport, Ball stated, "I'm here because I fought for this country! Are you a Trump voter? . . . I'm here because I fought for January 6!" He explained to the officer, "our country is hijacked right now! We are in an occupied country by an unelected force." Ball was taken to the Citrus County Sheriff's Department, where he was interviewed about his conduct.

During his interview, Ball stated that he loved what the country used to be. Ball explained to agents, "This country has been hijacked by a pedophile . . . I believe what I was doing was the right thing." Ball explained, "I went there in support of the American people, our rights, uh, the American way of life, what I used to think it was. The people. I went there for the people. My son. My family. . . . I went there with only good . . . intentions in my heart." Ball told agents that he threw "an M-100" at the officers and that he believed it exploded. Ball was shown an image online and confirmed that the object he threw was like what was depicted in the image (below).



*Figure 1: Open-source image shown to Ball during his interview.*

Ball explained to agents, "they're not powerful." Further, Ball explained "there's people blocking these tyrants that are, uh, verifying a pedophile fucking sicko fucking stealing our country. Yes, I was enraged and I should be enraged!" Additionally, Ball identified himself in 34 pages of photographs depicting him at the Capitol.

### b.   Procedural Posture

On May 10, 2023, the grand jury returned a criminal indictment against Daniel Ball alleging twelve counts of criminal conduct that occurred during the January 6, 2021, riot at the Capitol. ECF No. 6 (Indictment). Following a hearing on whether the defendant should remain detained pending trial, then-United States Magistrate Judge Robin M. Meriweather determined that each of the four factors to be considered by the Court weighed in favor of detention. Notably, the Court determined the strength of the government's evidence, "weigh[ed] heavily in favor of detention." ECF No. 14 p. 6. The defendant remains detained pending trial.

During a joint status report filed on November 1, 2023, the parties requested a trial date to occur during the summer of 2024. ECF No. 17. In its initial scheduling order, this Court set a trial date to occur September 24, 2024, with an early motions' deadline to answer any potential filings related to the indictment. ECF No. 19. The defendant twice moved to continue this date over the government's opposition. ECF No. 20 and 24. The Court entered a new pretrial scheduling order after the parties could confer on new dates. ECF No. 34. On August 9, 2024, the parties submitted to the Court a joint status report. ECF No. 40.

Ten days later, the defendant requested the items outlined within his motion to compel from the government for the first time. Specifically, he requested, *inter* alia: internal communications between various components of the Department of Justice, broad requests of discovery from other cases around the country, and internal deliberative material from within the United States Attorney's Office for the District of Columbia. ECF No. 42, p. 5-7 (Motion to Compel). As articulated, the defendant's motion seeks materials to prove a "selective prosecution argument," *id.* at 3. The defendant has provided no other evidentiary basis for these requests. Thus, the government effectively treats this Motion as one for discovery to support a selective prosecution finding. Because the defendant fails to identify how such materials are relevant—even in the selective prosecution context—his Motion must be denied.

## II.      Relevant Legal Background

"Rule 16 is a discovery rule designed to protect defendants by compelling the prosecution to turn over to the defense evidence material to the charges at issue." *Yates v. United States*, 574 U.S. 528, 539 (2015). But there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545 (1977). And the scope of discovery in criminal prosecutions is narrower than it is in civil case. *United States v. Hancock*, 441 F.2d 1285 (5th Cir. 1971).

4

Additionally, because "[t]he Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws," a "presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (internal quotation marks omitted) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). This presumption "rests in part on an assessment of the relative competence of prosecutors and courts." *Armstrong*, 517 U.S. at 465; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.").

"Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis courts are competent to undertake." *Armstrong*, 517 U.S. at 465; *see also United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) ("'[J]udicial authority is . . . at its most limited' when reviewing the Executive's . . . charging determinations" because "the Judiciary . . . generally is not 'competent to undertake' that sort of inquiry." (quoting *Cmty. for Creative Non–Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986); *Wayte*, 470 U.S. at 607)). Given these considerations, there is a presumption of regularity attached to prosecutorial decisions and, with that, a presumption of good faith. *See, e.g.*, *Fokker Servs.*, 818 F.3d at 741. As a result, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Armstrong*, 517 U.S. at 464.

A prosecutor cannot, however, base a charging decision upon a person's "race, religion," or other "arbitrary classification." *Armstrong*, 517 U.S. at 464. The doctrine of "selective prosecution" is a narrow exception to the general rule that a prosecutor's charging decisions are immune from judicial review where a defendant has sufficient evidence to show that a charging decision was based, at least in part, upon an improper ground. *See generally id.* A defendant bears a "heavy burden" in showing selective prosecution, because the prosecutor's presumption of regularity remains. *Branch Ministries v. Rossotti*, 40 F. Supp. 2d 15, 21 (D.D.C. 1999); *see also United States v. Gonzales*, 119 F. App'x 576 at 577 (5th Cir. 2004). The presumption is "formidable," *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) ("That presumption of regularity should be light discarded."), and can be overcome only by presenting "clear evidence" that the government acted improperly, *Armstrong*, 517 U.S. at 464.

Specifically, a defendant must make two showings. First, he must proffer "clear evidence" that similarly situated individuals of a different race, religion, or other arbitrary classification were not prosecuted. *Armstrong*, 517 U.S. at 464. "[T]h[is] standard is "a demanding one." *Id.* at 463. A similarly situated offender is one whose "circumstances present no distinguishable legitimate prosecutorial factors that might justify different prosecutorial decisions" between that person and the defendant. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2001). The phrase "similarly situated" is "narrowly" interpreted. *Id.* (quoting *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019)). In determining whether offenders are similarly situated, the court should "assess every" fact that is "at least arguably material" to the prosecutorial decision. *Lewis*, 517 F.3d at 27. Legitimate prosecutorial factors include "relative culpability, the strength of the case against particular defendants, willingness to cooperate, and the potential impact of a prosecution on related investigations." *United States v. Khanu*, 664 F. Supp. 2d 28, 32 (D.D.C. 2009), *see e.g. Frederick*

*Douglass Found. v. Dist. Of Columbia*, 82 F.3th 1122, 1152 (D.C. Cir. 2023) (affirming dismissal of selective prosecution claim based on single fact that plaintiffs had been denied permits prior to chalking political messages city streets whereas comparators, who were not arrested, had not sought permission prior to engaging in their conduct).

Second, a defendant must show that the government singled this defendant out for prosecution based on the impermissible reason. *See Stone*, 394 F. Supp. 3d at 30. In other words, to show discriminatory purpose, the defendant must present clear, credible evidence that the government is prosecuting him "at least in part because" of an arbitrary classification. *Wayte*, 470 U.S. at 610. Compulsion of materials at issue here requires a heightened showing.

The standard for obtaining discovery in support of a claim of selective prosecution is also a high one. The rigorous "showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464; *see also United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (reversing selective-prosecution discovery order that "threatene[d] the 'performance of a core executive constitutional function'" (quoting *Armstrong*, 517 U.S. at 465)); *United States v. Bennett*, 2023 WL 6847013 (D.D.C. Oct. 17, 2023) (denying selective prosecution motion in January 6 context). To meet this standard, a defendant must "come forward with some evidence tending to show the existence of the essential elements of this defense." *United States v. Navarro*, 627 F. Supp. 3d 1, 5 (D.D.C. 2022) (quoting *Armstrong*, 517 U.S. at 468). That is, the defendant must put forward "'some evidence' tending to show both discriminatory effect and discriminatory intent." *Lewis*, 517 F.3d at 25 (quoting *Armstrong*, 517 U.S. at 468) ("[D]iscovery will not be allowed unless the defendant's evidence supports each of the two furcula of his selective prosecution theory: failure on one branch dooms the discovery motion as a whole"). "If either part of the test is failed, the defense fails" and the defendant cannot

"subject[] the Government to discovery." *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 947 (D.C. Cir. 1982).[1]  Importantly, conclusory allegations are not sufficient; instead, the defendant's evidence must be "credible"—something more than "personal conclusions based on anecdotal evidence." *Armstrong*, 517 U.S. at 470.

### III.    Argument

The defendant's broad request appears derived from his allegation that: in two separate cases from two different states, two prosecutors may have made different charging decisions based on some evidence, of some kind. *See* ECF No. 42, at 4-5, 7 n.4. That is the extent of the argument. In attempting to respond to straw man, the government is left guessing as to exactly how prosecutorial decisions from two different cases meet a "rigorous" standard for discovery of protected information as to the Executive Branch's internal deliberative process.

 More prominently, he also relies on the idea that this information will also support his contention that the government has selectively targeted him based on his political views. ECF No. 42, p. 7. Neither provides a sufficient showing requiring this Court to grant his motion.

To start, the defendant barely attempts to explain how this material shows that the defendant is being treated disparately, in an unconstitutional fashion. He appears to cherry-pick cases, ignores the context of this case (a riot during a constitutionally mandated proceeding), ignores the facts of this case (throwing an incendiary device in the middle of the riot, at one of the worst areas of violence against law enforcement officers that day), and appears to misunderstand

---

[1] Moreover, a defendant cannot shift the burden to the government by claiming he cannot obtain better evidence without discovery from the government.  It "is not enough to say that evidence will materialize if the discovery is ordered." *United States v. Stone*, 394 F. Supp. 3d 1, 35 (D.D.C. 2019); *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1071 (9th Cir. 2003) ("Merely demonstrating that better evidence cannot be obtained without discovery does not suddenly render otherwise insufficient evidence sufficient.").

the nature of the selective prosecution argument in the first instance. The defendant halfheartedly recognizes that other judges have declined to compel the government to produce the same information he now seeks but cannot identify a *single* instance of any judge in this context compelling such information. ECF No. 42, at 7 n.7.

Indeed, in *United States v. Judd*, 579 F. Supp. 3d 1, 5 (D.D.C. Dec. 28, 2021), Judge McFadden dealt with one of the same issues: whether defendants who rioted outside the federal courthouse in Portland occupied the same wavelength as the January 6 assault case before him. In denying the selective prosecution motion, Judge McFadden noted that—while he had practical concerns about some of the decisions made in the Portland riots, and identified some of the same cases the defendant now identifies—the defendant must still "show that the Portland defendants are similarly situated to him. He cannot do so." *Id.* at 7. As stated:

> Although both Portland and January 6 rioters attacked federal buildings, the Portland defendants primarily attacked at night . . . In contrast, the January 6 rioters attacked the Capitol in broad daylight . . . their actions endangered hundreds of federal officials in the Capitol complex . . . The action in Portland, though destructive and ominous, caused no similar threat to civilians.

*Id.* at 7-8.  In other words, the Portland defendants are not similarly situated to *Judd*, who was also accused of lighting an object on fire. *Id.* at 3. Notably, the incendiary device in *Judd* was largely unknown—believed to be a firecracker—and did not explode. *Id.* In contrast, the government can prove beyond a reasonable doubt that the defendant's weapon was an explosive[2] under federal law, and did explode, in the midst of a riot. As properly stated in *Judd*, the defendant has not met "even

---

[2] The defendant seizes upon this fact to buttress his claim that in a different case, a prosecutor declined to prosecute a case "more severely" even though the device was similar to the one in this case. *See* ECF No. 42, at 7 n.5. But this entire argument is shoddy guesswork, and far from the type of "rigorous" showings that pierce the veil of government deliberation. It is also impossible to discern the basis of this "understanding," given the myriad of evidentiary and practical reasons any one prosecutor might decide a certain course in a certain case.

the threshold" for such discovery. *Id.* at 8. Of course, the defendant pithily dispenses with this analysis by claiming—without explaining why—that cases involving such analysis must have relied "on inaccurate or incomplete portrayals" and such analysis was "more or less irrelevant and inapplicable". ECF No. 42, at 7 n.7. The defendant protests that his concern is founded by the fact that he is the "only January 6 defendant charged with Section 844(h)." *Id.* That is true. He is also the only January 6 defendant who threw an operable explosive into a crowd of police officers protecting the U.S. Capitol during a proceeding legally mandating the peaceful transfer of power.

The defendant's claim for discovery based on his belief that the charges in this case were politically motivated fares no better. The thrust of his argument is that he is being treated differently because of his political persuasion. *See* ECF No. 42, at 3 (citing the government's citation of his interview). Ignoring that the government's citation had nothing to do with prosecuting him for his political beliefs, the defendant attempts to support this allegation through several confusing footnotes, and claims that his counsel was somehow "denied the ability to speak with" prosecutors. *Id.* at n.4. As Judge Bates noted in *United States v. Padilla*, 2023 WL 1964214, at *6 (D.D.C. Feb 13, 2023), these scattered comparisons are "unavailing." *Id.* Just as defendants who have alleged (erroneous) bias by the FBI or the Justice Department through "anecdotal evidence", *id.*, the defendant's ultimate claim—that he is being prosecuted in the manner he is because of his "constitutionally protected viewpoints"—is similarly unpersuasive.

Here, the defendant is charged with crimes that focus on conduct—the use of an incendiary device against law enforcement officers. While his statements in his interview may provide evidence of motive and intent, the defendant somehow fails to note that the criminal complaint in this case alleged a violation of §844(h) from the very beginning. ECF No. 1. Moreover, the accompanying statement of facts was devoid of any discussion of an interview—because the

defendant had not yet been arrested. ECF No. 1-1. In fact, the facts prior to arrest said *nothing* regarding the defendant's political beliefs. The takeaway is obvious.

The defendant seeks information related to disparate treatment between two non-January 6 matters and his, then claims his prosecution is largely driven by political animus. Instead of providing information, or meaningful argument, he cabins his request by conditioning his motion to compel on a *future* motion for selective prosecution—which is, by its very nature, an argument for discovery. Either way, his argument is premised on speculation and guesswork through a patchwork of largely inapposite cases. For those reasons, his motion should be denied.

## IV.    Conclusion

Because the defendant has not made a sufficient showing required for discovery to support his selective prosecution claim, and otherwise seeks information specifically excluded from disclosure, this Court should deny the defendant's motion to compel.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Date: August 30, 2024          /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

ALIYA S. KHALIDI
Assistant United States Attorney
Mass. Bar No. 682400
601 D St. NW
Washington, D.C. 20530
(202) 252-2410
aliya.khalidi@usdoj.gov