**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:23-cr-00160-RC-1** |
| **DANIEL BALL,** | ) | |
| ***Defendant.*** | ) | |

**REPLY TO GOVERNMENT'S OPPOSITION**
**TO DEFENDANT BALL'S MOTION TO COMPEL**

Daniel Ball, by and through undersigned counsel, respectfully submits this Reply to the government's Opposition to his request for this Honorable Court to compel the government to disclose relevant discovery and communications relating to the prosecution of *United States v. Ty Fox*, No. 3:20-cr-00501-SI-1 (D. Or.), and *United States v. Sami Horner*, No. 2:20-cr-00144-RAJ-1 (W.D. Wash.), as well as certain materials related to the prosecution of Mr. Ball, for use in Mr. Ball's motions to suppress, motion to dismiss, and expert reports (which include case comparisons).[1]

**DISCUSSION[2]**

The government mischaracterizes various facts directly at issue in and surrounding the case. For instance, it suggested that defense counsel fabricated her representation that the government refused to allow her to speak with or have the contact information for the Assistant U.S. Attorney assigned to Mr. Ball's matter in the Middle District of Florida. *See* ECF No. 43 at 10. The government's position is perplexing since, as the Court will undoubtedly recall, this

[1] Consistent with D.C. Circuit precedent, Mr. Ball will submit evidence as to selective prosecution at trial so long as the Court permits. *See United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983).
[2] As an initial matter, defense counsel inadvertently listed September 6, 2024 as the deadline for expert materials as opposed to the date by which she wished the Court to require the requested disclosures.

issue was specifically addressed on the record during the last status conference. All the more availing, Exhibit A provides a documented instance of the government's refusal to allow defense counsel to speak with the AUSA in the Middle District of Florida.[3] The government's attempt to hide the fact that it sought to keep communications between the offices hush hush offers support that there is wrongdoing afoot by the prosecution in this case. *See also* Exhibit B.

The government also provides a disingenuous and misleading picture of Mr. Ball's interview and the government's expressed prejudice against Mr. Ball. Contrary to its representations in its pleading, the government specifically represented to defense counsel that the content of Mr. Ball's statements during his interview was *the distinguishing factor* that the government believed made Mr. Ball's case different from and more reprehensible than cases where significantly more egregious devices were used under significantly more egregious circumstances but less severe charges were brought. In other words, as the government admitted outright to defense counsel, the relevant difference between the cases was ideology, or, in other words, the content of the speech. To be sure, unlike in Mr. Ball's case, in the other cases, defendants expressed their intent to kill and maim people, including officers performing official duties, but supported causes aligned with the current Administration.

Although of no import to the instant determination, as an attempt to salvage its credibility and coverup its prejudice, the government *claims* that its reference to Mr. Ball's interview pertained to motive. But this is simply not true. In any event, much of Mr. Ball's interview does not, in fact, relate to his thought process on or before January 6. Instead, as is readily apparent

[3] Exhibit A shows an email chain accounting for most of the correspondence pertaining to defense counsel's request to speak with the Middle District. It does not, however, account for a call that took place between the parties, during which they briefly touched on defense counsel's request to communicate with the Middle District but primarily discussed scheduling to allow for sufficient time for a plea to be considered by Mr. Ball under the parties' understanding that he wished to first have a determination on his motion to dismiss.

from even the portions on which the government relied in its Response, much of the interview related to Mr. Ball's dissatisfaction with and fear about the current Administration as per the time of the interview—which took place years after January 6, 2021. But, to the extent that any of Mr. Ball's statements speak to motive,[4] the government's reliance on even those statements as justification for its unwillingness to afford Mr. Ball a plea offer that is commensurate with the conduct as compared to similar cases is, of course, constitutionally violative. The government's reliance on Mr. Ball's beliefs as the distinguishing factor for its decision on how to conduct its prosecution of Mr. Ball is unequivocally unconstitutional, as it violates the First Amendment and the Equal Protection Clause. And, Mr. Ball has undeniably been charged disparately as a result.[5] *See, e.g.*, *United States v. Maza*, No. 3:20-cr-00343 (D. Or.) (charging the defendant with one count of Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, 18 U.S.C. § 111(a) and (b), despite the fact that the defendant was the primary agitator, broke a courthouse window, and threw a large lit commercial explosive into a small confined space in an area that was filled with law enforcement personnel, causing law enforcement personnel to suffer severe injuries, such as one member of law enforcement suffering from burns, lacerations, soreness, and bruising).

Mr. Ball has plainly come forth with "some evidence tending to show the existence of the essential elements of [a selective prosecution] defense."[6] And, Mr. Ball does exactly the opposite

---

[4] To the extent Mr. Ball speaks about his mindset on or before January 6, Mr. Ball only speaks about what motivated him to go to Washington, D.C., on January 6 to *protest* the presidential election results.

[5] Contrary to its ethical obligations, the government fails to acknowledge precedent that, when the First Amendment is at issue, a defendant need not make a showing of discriminatory intent. *See* ECF No. 42 at 7 n.6.

[6] Mr. Ball's claim would not be the first successful claim of selective prosecution under similar circumstances. To be sure, earlier this year, a judge sitting before the U.S. District Court for the Southern District of California granted a motion to dismiss based on selective prosecution. *See* United States v. Rundo, et al., No. 2:18-cr-00759-CJC, ECF No. 333 (C.D. Cal. Feb. 21, 2024) ("By many accounts, members of Antifa and related far-left groups engaged in worse conduct and in fact instigated much of the violence that broke out at these otherwise constitutionally protected rallies to silence the protected speech of the supporters of President Trump. That is constitutionally impermissible. The government cannot prosecute RAM members such as Defendants while ignoring the violence of members of

of what the government suggests. He does not "cherry pick" cases or ignore the context in which his alleged conduct was committed. He submits a narrow request based on cases for which he has not been able to acquire documentation despite undersigned counsel's informal conversations with the defense counsel and prosecutors in the respective cases, during which she confirmed such case files include helpful information in furtherance of Mr. Ball's selective prosecution argument. *See, e.g.*, Exhibit C. Indeed, contrary to the government's contention, Mr. Ball's assertions about prosecutors' decisions in other cases is not "shoddy guesswork." ECF No. 43 at 9 n.2.

Moreover, Mr. Ball does not seek the "same information" as in other January 6 cases. ECF No. 43 at 9. In addition to seeking information relating to Mr. Ball's own federal cases, it is undersigned counsel's recollection that all except one of the cases for which he is seeking information (i.e., *Rogers*) have not been mentioned in any January 6 litigation until this point, as they relate to the use of incendiary devices.[7] Indeed, selective prosecution is a fact-intensive inquiry. As explained, Mr. Ball plans to present case comparisons by one or more of his experts that show how the government has wildly overcharged Mr. Ball as compared to others who were similarly situated but for their respective beliefs. To be sure, defense experts have already concluded that whatever devices were used in *Fox* and *Horner* were far more harmful than the one purportedly used by Mr. Ball, regardless of the respective context. The requested information will allow Mr. Ball's explosives and pyrotechnics expert to craft a report based on fact as

---

Antifa and related far-left groups because RAM engaged in what the government and many believe is more offensive speech.").

[7] The government appears to mislead the Court by discussing the *Judd* case. Of great import, Judd was not charged with an explosives related charge, despite using a device that counsel understands (based on conversations with experts) would be no more harmful than the device allegedly used by Mr. Ball. But he was not the only person to throw an incendiary device. To be sure, contrary to its representation, the government knows that, beyond the person purported to be Mr. Ball, other individuals threw lit incendiary devices at officers in the tunnel on January 6. For instance, the government previously clarified to counsel that it misidentified a flashbang that was apparently thrown back at law enforcement (burning the neck of an officer) as the device Mr. Ball purportedly threw.

opposed to experience-based conjecture about the respective devices. The government should not be able to monopolize information such as the type of devices and the extent of injuries caused in a case. The public and Mr. Ball have a right to this information. And, contrary to the government's assertion, this is not an argument of wanting the better evidence; this is an argument for the defense to have access to evidence that is not otherwise attainable in any form.

On a similar vein, defense counsel is, frankly, taken aback by the government's claim that Mr. Ball failed to identify how the materials sought are relevant, particularly when Mr. Ball already cited the case comparisons (based on information available at the time to defense counsel) in a plea counteroffer letter last September. Notably, in response to the counteroffer letter, the government asked if defense counsel planned to advance a selective prosecution claim.

As a final point, recently, government counsel plainly acted in bad faith in its dealings with defense counsel—further bolstering Mr. Ball's selective prosecution argument and establishing another basis to argue vindictive prosecution.[8] *See* Exhibit D. Indeed, since defense counsel informed the government of its intention to proceed with a selective prosecution argument, the government has denied defense counsel the ability to speak with the Middle District of Florida AUSAs and has gone back on its representations that it made to both the Court and defense counsel. As the Court surely recalls, the parties reset the dates in a particular fashion to maintain Mr. Ball's ability to file and argue a motion to dismiss before having to decide on any plea. Mr. Ball's ability to file and have a decision on a motion to dismiss was the single unwavering request defense counsel had for the government; the parties agreed, and this agreement has driven the parties' actions up until this point. Curiously, without any warning, since defense counsel has provided definitive confirmation of its intent to proceed on a theory of

---

[8] Despite repeated requests by defense counsel, the government was unwilling to provide any insight into the Middle District of Florida case prior to indictment.

selective prosecution, the government has gone back on its word and is now requiring Mr. Ball to decide whether to accept a newly advanced plea offer prior to even filing any motion to dismiss and in a timeline that hinders counsel's ability to dedicate the necessary time to both the plea and the filings.[9] With all due respect, the government has turned a blind eye to the fact that prosecutors have a duty to be reasonable, fair, respectful, and honest in their actions (including extending plea offers), that prosecutors must act in a manner to seek justice, not inhibit it, and that prosecutors, like any party, are bound by the agreements they make. Indeed, the government has run afoul of what, at a minimum, is required. To put it simply, in addition to offending other constitutional protections, the government's conduct offends due process.

In light of the above, Daniel Ball, by and through undersigned counsel, requests the aforementioned relief. Counsel also, regrettably, asks that this Court hold an emergency hearing, as she believes it is wholly inappropriate for current government counsel to remain on Mr. Ball's case.

[9] Of significance, the Middle District of Florida indictment charges one count of Section 922(g)(1). Among other issues present in so charging Mr. Ball, per multiple sources in the discovery, the government is aware that, *inter alia*, the alleged firearms and ammunition were not Mr. Ball's and Mr. Ball did not put the items in his home or know they were being placed there. *See* Exhibit D. So, without access to the requested communications, one can only wonder how the Middle District of Florida ultimately found it appropriate to proceed with indicting Mr. Ball.

Respectfully submitted,

/s/ Amy C. Collins
Amy C. Collins
D.C. Bar No. 1708316
888 17th Street, NW, Suite 1200
Washington, D.C. 20006
(228) 424-0609
amy@amyccollinslaw.com
acollins@kalbianhagerty.com
*Counsel for Daniel Ball*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 5th day of September 2024, I have served this Reply upon all parties in this matter through the CM/ECF system.

/s/ Amy C. Collins
Amy C. Collins