UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.   ) | Criminal No. 1:23-cr-00160-RC-1 |
| ) | |
| DANIEL BALL,   ) | |
| *Defendant.*   ) | |

### DEFENDANT'S MOTION TO DISQUALIFY GOVERNMENT COUNSEL

Daniel Ball, by and through undersigned counsel, respectfully requests that this Court disqualify Assistant U.S. Attorney Adam Dreher as government counsel in Mr. Ball's case and prohibit him from future involvement in Mr. Ball's case beyond administrative actions necessary to transfer the case to a new lead Assistant U.S. Attorney.

### DISCUSSION[1]

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). "The disqualification of [g]overnment counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (quoting *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995)).

---

[1] This Motion is to serve as a starting point for the parties and the Court to engage in a discourse during the status conference taking place later today; accordingly, if the Court would find it helpful for Mr. Ball to further brief on authorities and arguments in support of his request, we would ask that the Court allow for Mr. Ball to rely on additional arguments and authorities where appropriate. Moreover, Mr. Ball incorporates by reference all of Mr. Ball's docketed filings (including accompanying attachments) in this case. Relatedly, the various arguments (including factual examples) herein lend support to each other and should be treated as incorporated into an argument where appropriate, even when not specifically provided.

Despite defense counsel's best efforts to remedy the situation, disqualification of AUSA Dreher is necessary.

Various ethical and legal considerations exist that attorneys must abide by. Some are specific to prosecutors. Some are universal. AUSA Dreher has continuously failed to act within the bounds of his ethical and legal duties in Mr. Ball's case; this has sincerely jeopardized the integrity of the adversary process. While we believe the Court will ultimately dismiss this case with prejudice on the basis of selective prosecution, vindictive prosecution, or the like in a pretrial posture based on such conduct, in the meantime, the Court must disqualify AUSA Dreher as counsel for the government.

I.     ETHICAL CONSIDERATIONS

A state's ethical rules equally apply to federal prosecutors and other attorneys who practice in the state. *See* 28 U.S.C. § 530B(a); *see also United States v. Ford*, 176 F.3d 376, 381 (6th Cir. 1999) (considering whether federal prosecutor practicing in Kentucky should have been disqualified under Kentucky law). Moreover, there are, of course, other standards by which a prosecutor and/or attorney must abide or that are otherwise informative when assessing conduct. The rules of ethics in D.C. and other applicable ethical standards have been pervasively and shamelessly offended in Mr. Ball's case, as discussed in brief below.

A.    Rule 3.8 of the D.C. Rules of Professional Conduct

Rule 3.8 prohibits prosecutors from invidiously discriminating against any person, failing to disclose exculpatory information, and providing false information to a grand jury, among other things.

Other rules manifest similar prohibition and guidance. Standard 3-1.6(a) of the American Bar Association's Criminal Justice Standards prohibits prosecutors from using "improper

considerations, such as partisan or political or personal considerations, in exercising prosecutorial discretion." It further provides that "[a] prosecutor should strive to eliminate implicit biases, and act to mitigate any improper bias or prejudice when credibly informed that it exists within the scope of the prosecutor's authority."

Standard 3-1.2(b) of the American Bar Association's Criminal Justice Standards provides that "[t]he primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict." It elaborates, "[t]he prosecutor serves the public interest and should act with integrity and balanced judgment to increase public safety both by pursuing appropriate criminal charges of appropriate severity, and by exercising discretion to not pursue criminal charges in appropriate circumstances." Further, it prohibits prosecutors from failing to respect the constitutional and legal rights of all persons, including defendants.

Discussion with the Federal Public Defender and various federal appellate and trial counsel has confirmed many times over our position that this case—including the various flaws in the government's investigation and prosecution of it—is one of great factual and legal complexity. Of course, as the government boasted during its first meeting with defense counsel, in sum, *this is the first explosives case charged in the district in over 20 years*. AUSA Dreher even asked in a manner that was, respectfully, quite rude, defense counsel (a young female, who does not walk around handing out her resume filled with lines of text which only touch the surface of her years of dedicated national security expertise), "How did you get this case?!" At the outset, AUSA Dreher's motives were concerning.

AUSA Dreher has acted in stark contrast to such mandates. In addition to the aforementioned, we find it necessary to bring to the Court's attention that he also reached out to the D.C. Jail to inquire about experts visiting Mr. Ball, without the consent of defense counsel.

3

### B. Standard 3-1.7(a) of the American Bar Association's Criminal Justice Standards

Under this rule, prosecutors should know and abide by the ethical rules regarding conflicts of interest and be sensitive to facts that may raise conflict issues. When a conflict requiring recusal exists and is non-waivable, the rule provides that the prosecutor should recuse from further participation in the matter and the office should not go forward until a non-conflicted prosecutor is in place. AUSA Dreher's hostility towards Mr. Ball and his beliefs has created an undeniable and immovable conflict of interest.

### C. Rule 3.7 of the D.C. Rules of Professional Conduct

AUSA Dreher is functionally a witness in Mr. Ball's selective and vindictive prosecution defense. (Such also serves a separate basis to find a conflict of interest.) Accordingly, disqualification is required on this ground as well. *See, e..g., In re Flynn*, 961 F.3d 1215, 1233 (D.C. Cir.), *reh'g en banc granted*, *order vacated*, No. 20-5143, 2020 WL 4355389 (D.C. Cir. July 30, 2020), *and on reh'g en banc*, 973 F.3d 74 (D.C. Cir. 2020) (Wilkins, J., dissenting) (citation omitted) ("[C]ourts have allowed not just plain hearings (or oral arguments) on such motions to dismiss, but evidentiary hearings where the prosecutor is subject to questioning under oath.").

### D. A Prosecutor's Bandwidth

Standard 3-1.9(a) of the American Bar Association's Criminal Justice Standards provides that "[t]he prosecutor should act with diligence and promptness to investigate, litigate, and dispose of criminal charges, consistent with the interests of justice and with due regard for fairness, accuracy, and rights of the defendant, victims, and witnesses." Accordingly, it also requires that "[t]he prosecutor's office should be organized and supported with adequate staff and facilities to enable it to process and resolve criminal charges with fairness and efficiency."

Similarly, Standard 3-1.8(a) of the American Bar Association's Criminal Justice Standards prohibits prosecutors from carrying a workload "that, by reason of its excessive size or complexity interferes with providing quality representation, endangers the interests of justice in fairness, accuracy, or the timely disposition of charges, or has a significant potential to lead to the breach of professional obligations."

AUSA Dreher declined to reproduce discovery or an organized and/or searchable index to defense counsel on more than one occasion after defense counsel made such request based on her concern that she did not have all the discovery because her prior firm appeared to have not preserved the entire case file for Mr. Ball. AUSA Dreher insisted he did not have time to accommodate defense counsel's request due to other case obligations. (Notably, while relatively voluminous, the discovery productions Ms. Collins requested to be produced only involved *three* productions.) Although Ms. Collins was Mr. Ball's lead counsel at Price Benowitz, the fact that she left the matter and was re-retained triggered the government's discovery obligation to produce all discoverable materials to her. AUSA Dreher scoffed at this obligation and disparagingly insisted Ms. Collins was the one with "unfair and unreasonable" expectations. He further commented that he did not have the time to

Ms. Collins is a solo practitioner. AUSA Dreher has the resources of the U.S. government at his disposal; the USAO has paralegals, interns, assisting case agents, and plenty of attorneys. There is undeniable no reason for AUSA Dreher to decline a simple request to produce the three discovery productions it is constitutionally obligated to provide. Particularly when every single discovery request by defense counsel in this case has been fruitful and prompted disclosure of materials, many of which the government never even planned to disclose.

### E. Standard 3-1.9(c) of the American Bar Association's Criminal Justice Standards

Standard 3-1.9(c) of the American Bar Association's Criminal Justice Standards prohibits prosecutors from unreasonably opposing requests for continuances from defense counsel. Almost every, if not every, request to continue or extend—no matter hour brief (e.g., one day, one hour)—has been opposed. When defense counsel's dog suffered a spinal cord injury and became paralyzed, requiring emergency surgery to prevent permanent paralysis or death; the government opposed. When defense counsel had debilitating kidney stone symptoms; the government opposed. A defense expert went MIA a day or two before the disclosure deadline; the government opposed. If these circumstances do not warrant the government's consent or at least it's decision to take no position a brief continuance or extension, what circumstances would?

### F. Rule 3.4 of the D.C. Rules of Professional Conduct

Rule 3.4(a) of the D.C. Bar's Rules of Professional Conduct prohibits lawyers from obstructing another party's access to evidence if the lawyer reasonably should know that the evidence is or may be the subject of discovery or subpoena in any pending or imminent proceeding. Relatedly, under Rule 3.4(d), a lawyer is prohibited from failing to "make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party." Where an attorney disobeys an obligation under the rules of a tribunal, including discovery mandates, the attorney also violates Rule 3.4(c).

AUSA Dreher's continued disinterest in and aversion to providing legally mandated discovery disclosures to Mr. Ball and his counsel runs afoul of these rules. There are unrefutably exculpatory and impeachment materials that the government has previously denied defense counsel access to, and this trend continues. And even after it decides to disclose certain materials, it maintains it did so despite the materials not falling within its discovery obligations. The government's position and conduct are both deeply troubling and constitutionally violative.

The government has made the discovery process an extremely time-consuming endeavor for defense counsel, relentlessly placing obstacles and objections in the way; this includes constant backpedaling from its prior assurances that it will assist the defense in obtaining certain materials it believed in the first instance were discoverable.

In each instance, AUSA Dreher's conduct represents a stark contrast of the interests of justice and fair competition contemplated by rules such as these.

### G. Rules and Standards Regarding Conduct Involving Defense Counsel and the Court

Under various rules and standards, attorneys must treat opposing counsel and the Court with respect and refrain from material misrepresentations. See, e.g., Rule 3.3 of the D.C. Rules of Professional Conduct

In this case, the government has continuously misrepresented facts and law to the Court and to counsel. For instance, the government previously failed to disclose all the enclosures it submitted with its expert disclosures the night of September 10, 2024 despite its previous assurances that it had disclosed all expert materials. Defense experts thus required more time to review such materials given the Court's directive to submit a single expert report for each expert. *See* ECF No. 34.

The government has also pervasively treated counsel with disrespect, sometimes amounting to bullying, and gone back on its word. An example of the former was a conversation the government had with AUSA Dreher and the previous AUSA on the case. Following the call, the other AUSA called Ms. Collins to apologize on how rude and inappropriate AUSA Dreher behaved towards her. An example as to the latter, the government went back on its word as to the timing it would entertain a plea deal.

7

There is a conflict of interest at play that AUSA Dreher has not been able to overcome, and we are confident he will not be able to overcome.

## II.  CONSTITUTIONAL CONSIDERATIONS

Mr. Ball has a forthcoming motion to dismiss and motions to suppress that will set forth an overview of the pervasive government misconduct that has taken place in his case. Some of this misconduct has already been addressed on the record. *See, e.g.*, ECF No. 53.

Indeed, defense counsel has made various references to the government's selective and vindictive prosecution of Mr. Ball. However, to remind the Court, one such example of vindictive prosecution is as follows: after Mr. Ball's denial of a disparately severe plea offer and expression of his intent to engage in a selective prosecution argument, AUSA Dreher engaged in hush hush dealings that somehow resulted in a prosecution for felon in possession in another district after over a year following the search where the purported firearm was located. AUSA Dreher declined to allow defense counsel to even know the name of the prosecuting attorney in the Middle District prior to indictment to discuss a potential pre-indictment dismissal. And, notably, there is significant information in the discovery in Mr. Ball's January 6 case to undermine the validity of a felon in possession charge, which the Middle District does not appear to be privy to. *See also* Rule 3.8 of the American Bar Association Rules of Professional Conduct. In sum, without any reference being made to defense counsel of the second prosecution previously, a prosecution in another jurisdiction springs up despite sincere questions as to the legitimacy of such a prosecution.

## CONCLUSION

WHEREFORE, Daniel Ball, by and through counsel, respectfully requests the aforementioned relief.

Respectfully submitted,

_____/s/_____
Amy C. Collins
D.C. Bar No. 1708316
888 17th Street, NW, Suite 1200
Washington, D.C. 20006
(228) 424-0609
acollins@kalbianhagerty.com
amy@amyccollinslaw.com
*Counsel for Daniel Ball*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of October 2024, I caused a true and correct copy of the foregoing Motion to be delivered via CM/ECF to all parties.

_____/s/_____
Amy C. Collins